# Exhibit A

FIRST AMENDED **SUMMONS**
*(CITATION JUDICIAL)*

**SUM-100**

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

QUALITY LOAN SERVICE CORPORATION; JP MORGAN CHASE
BANK, NA; Additional Parties Attachment form is attached.

**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

**JUL 0 8 2016**

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PAUL LEE and YAR YEON LEE

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

   *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* SUPERIOR COURT OF CALIFORNIA<br>FOR THE COUNTY OF LOS ANGELES<br>111 North Hill Street, Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>BC617855    DEPT. 31 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Law Offices of Steven J. Barkin, 3700 Wilshire Blvd., #940, Los Angeles, CA 90010 (213) 232-1666

| DATE: **JUL 0 8 2016** | Clerk, by | **M. Soto** | , Deputy |
|---|---|---|---|
| *(Fecha)* SHERRI R. CARTER | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

[SEAL]

Page 1 of 1

| Form Adopted for Mandatory Use | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 |

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PAUL LEE, et al. vs. QUALITY LOAN SERVICE CORP., et al. | BC617855 |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[ ] Plaintiff   [✓] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

DEUTSCHE BANK NATIONAL TRUST COMPANY; DEUTSCHE BANK NATIONAL TRUST COMPANY as TRUSTEE FOR WAMU 2005-AR16 and DOES 1 TO 20, INCLUSIVE,

Page __2__ of __2__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

| 1 | **Steven J. Barkin          State Bar No.: 91575** |
| 2 | **LAW OFFICES OF STEVEN J. BARKIN** <br> **3700 Wilshire Boulevard • Suite 940** |
| 3 | **Los Angeles, California 90010** <br> **Telephone: (213) 232-1666 • Fax: (213) 232-1668** |
| 4 | **Email: stevenbarkin@gmail.com** |

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

**JUL 0 8 2016**

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

Attorneys for: plaintiffs PAUL LEE AND YAR YEON YANG

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| PAUL LEE AND YAR YEON YANG,<br><br>            Plaintiffs,<br><br>vs.<br><br>QUALITY LOAN SERVICE CORPORATION; JP MORGAN CHASE BANK, NA; DEUTSCHE BANK NATIONAL TRUST COMPANY; DEUTSCHE BANK NATIONAL TRUST COMPANY as TRUSTEE FOR WAMU 2005–AR16 and DOES 1 TO 20, INCLUSIVE,<br><br>            Defendants. | CASE NO.: BC617855<br>Original Complaint filed: 4/22/2016<br>Assigned to Dept. 31<br>Judge Samantha Jesmer<br><br>FIRST AMENDED COMPLAINT<br>1.    Violation of *California Homeowners Bill of Rights*<br>2.    Wrongful Foreclosure<br>3.    Violation of *RESPA*<br>4.    Fraud<br>5.    Quiet Title *Code of Civil Procedure* §760.010 et seq.<br>6.    Injunctive Relief |

COMES NOW plaintiffs PAUL LEE and YAR YEON YANG and for a

complaint against defendants QUALITY LOAN SERVICE CORPORATION; JP

MORGAN CHASE BANK, NA; DEUTSCHE BANK NATIONAL TRUST COMPANY;

DEUTSCHE BANK NATIONAL TRUST COMPANY as TRUSTEE FOR WAMU 2005–

AR16 and DOES 1 TO 20, and each of them, and allege as follows:

GENERAL ALLEGATIONS

1. Plaintiffs are unaware of the true names and capacities

of defendants sued herein as Does 1 through 50, and, therefore,

sue said defendants under such fictitious names. Plaintiffs will

1   seek leave of court to amend this complaint when the true names

2   and capacities of said defendants are fully ascertained.

3       2. Defendants are limited partnerships, corporations and

4   other business entities duly licensed to conduct business within

5   the State of California.

6       3. Plaintiffs are informed and believe, and on that basis,

7   allege that each defendant named herein, including Does 1 through

8   20, inclusive, were, at all times herein mentioned, the agent,

9   servant, and/or employee of each and every other defendant acting

10  in the course and scope of said agency, service, and employment,

11  and each defendant ratified the acts of each and every other

12  defendant.

13      4. Plaintiffs are residents of City of Santa Monica and

14  County of Los Angeles, State of California.

15      5. That on about October 10, 2005 by virtue of a grant deed

16  recorded on November 1, 2005 with the Recorder's Office of the

17  County of Los Angeles under recorder's document no.: 05 2633045,

18  plaintiffs became the owners of record of real property located

19  at 1231 18th Street, Unit A,, Santa Monica, CA 90404 within the

20  County of Los Angeles and State of California [APN: 4276-012-

21  037], and more specifically described by its legal description:

22          A CONDOMINIUM COMPRISED OF:

23          PARCEL 1:

24          A) AN UNDIVIDED 1/6th INTEREST IN AND TO LOT 1 OF TRACT NO.

25          49337, IN THE CITY OF SANTA MONICA, COUNTY OF LOS

26          ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN

27          BOOK 1169 PAGES 42 AND 43 OF MAPS, IN THE OFFICE OF THE

28          COUNTY RECORDER OF SAID COUNTY.

FIRST AMENDED COMPLAINT

1    EXCEPT THEREFROM UNITS 1 TO 6, INCLUSIVE, AS SHOWN AND

2    DEFINED UPON THE CONDOMINIUM PLAN RECORDED FEBRUARY

3    13, 1991 AS INSTRUMENT NO. 91-220773, IN SAID OFFICE OF THE

4    COUNTY RECORDER.

5    B) UNIT 1, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN

6    REFERRED TO ABOVE.

7

8    PARCEL 2

9    THE EXCLUSIVE NON-SEVERABLE EASEMENT TO USE BALCONY

10   SPACES 1C FOR BALCONY, AND SPACES P1, P2, P3 AND P4 FOR

11   VEHICULAR PARKING PURPOSES, AND SAID SPACES ARE SHOWN

12   AND DEFINED ON THE CONDOMINIUM PLAN ABOVE.

13

14   RESERVING THEREFROM EXCLUSIVE USE COMMON AREA

15   EASEMENTS FOR PARKING SPACES, DESIGNATED "P" OR "PC", IN,

16   OVER, ACROSS AND THROUGH THOSE PORTIONS OF THE

17   COMMON AREA AS SHOWN ON THE ABOVE REFERRED TO

18   CONDOMINIUM PLAN.

19   A copy of said grant deed is attached hereto as Exhibit "1" and

20   made a part hereof by reference.

21        6. On or about November 1, 2005, Washington Mutual

22   Bank, FA, recorded a trust deed signed by plaintiffs as Trustors

23   with the Los Angeles County Recorder's Office under document no.

24   05 2633055 in connection with the property described in paragraph

25   5 above to secure a loan made by Washington Mutual Bank, FA to

26   plaintiffs in the amount of $787,500.00. A copy of said trust

27   deed is attached hereto as Exhibit "2" and made a part hereof by

28   reference.

FIRST AMENDED COMPLAINT

LAW OFFICES OF STEVEN J. BARKIN

7. That on or about February 27, 2009, a NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST regarding the deed of trust described in paragraph 6 above, was recorded by defendant QUALITY LOAN SERVICES CORP with the Los Angeles County Recorder's Office under document no. 2090277924 on behalf of Washington Mutual Bank, FA . A copy of said NOTICE OF DEFAULT is attached hereto as Exhibit "3" and made a part hereof by reference.

8. On April 14, 2009 a SUBSTITUTION OF TRUSTEE dated February 26, 2009 purportedly designating defendant QUALITY LOAN SERVICE CORPORATION as the new trustee was recorded with the Los Angeles County Recorder's Office under document number 20090526080. A copy of said SUBSTITUTION OF TRUSTEE is attached hereto as Exhibit "4" and made a part hereof by reference.

9. Eric Tate on behalf of defendant J.P. Morgan Chase Bank, NA signed the SUBSTITUTION OF TRUSTEE on February 26, 2009, however, his signature was not notarized until March 5, 2009 by Ashley Olson, a notary licensed in Minnesota and employed by defendant QUALITY LOAN SERVICE CORPORATION. Ms. Olsen's notary acknowledgment indicates that Mr. Tate appeared before her and signed the document on March 5, 2009.

10. That on June 22, 2009 a trustee's sale was conducted by the purported trustee defendant QUALITY LOAN SERVICE CORPORATION and a TRUSTEE'S DEED UPON SALE was recorded with the Los Angeles County Recorder's Office on June 29, 2009 under document number 20090975735. A copy of said TRUSTEE"S DEED UPON SALE is attached hereto as Exhibit "5" and made a part hereof by reference.

11. That on or about January 25, 2011 a NOTICE OF RESCISSION OF TRUSTEE'S DEED UPON SALE was recorded with the Los Angeles

-4-

LAW OFFICES OF STEVEN J. BARKIN

1  County Recorder's Office under document number 20110131315. A
2  copy of said NOTICE OF RESCISSION OF TRUSTEE'S DEED UPON SALE is
3  attached hereto as Exhibit "6" and made a part hereof by
4  reference.

5      12. That on or about January 28, 2011 a NOTICE OF TRUSTEE'S
6  SALE was recorded with the Los Angeles County Recorder's Office
7  under document number 20110154976. A copy of said NOTICE OF
8  TRUSTEE'S SALE is attached hereto as Exhibit "7" and made a part
9  hereof by reference.

10     13. That on February 27, 2012, October 4, 2012 and November
11  14, 2013 NOTICES OF TRUSTEE'S SALE was recorded with the Los
12  Angeles County Recorder's Office. Plaintiff does not know the
13  document numbers

14     14. That on or about November 1, 2012 an ASSIGNMENT OF DEED
15  OF TRUST from WASHINGTON MUTUAL BANK, FA to defendant DEUTSCHE
16  BANK NATIONAL TRUST COMPANY as TRUSTEE FOR WAMU 2005-AR16 was
17  recorded with the Los Angeles County Recorder's Office under
18  document number 20121661996. A copy of said ASSIGNMENT OF DEED OF
19  TRUST is attached hereto as Exhibit "8" and made a part hereof by
20  reference.

21     15. That on December 16, 2013 a trustee's sale was conducted
22  by the trustee defendant QUALITY LOAN SERVICE CORPORATION
23  pursuant to NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF
24  TRUST recorded on February 27, 2009 (Exhibit 3); and a TRUSTEE'S
25  DEED UPON SALE was recorded with the Los Angeles County
26  Recorder's Office on January 2, 2014 under document number
27  20140000909. A copy of said TRUSTEE"S DEED UPON SALE is attached
28  hereto as Exhibit "9" and made a part hereof by reference.

16. That the purported substitution of trustee described in paragraph 8 above is invalid as the signature of Eric Tate on behalf of defendant J.P. Morgan Chase Bank, NA was not properly notarized, and therefore null and void; and therefore, any action taken or conducted by defendant QUALITY LOAN SERVICE CORPORATION is null and void, as said defendant's substitution as trustee was not valid.

<u>FIRST CAUSE OF ACTION</u>

Violation of *California Homeowners Bill of Rights*

For a First Cause of Action against defendants QUALITY LOAN SERVICE CORPORATION; JP MORGAN CHASE BANK, NA; DEUTSCHE BANK NATIONAL TRUST COMPANY; DEUTSCHE BANK NATIONAL TRUST COMPANY as TRUSTEE FOR WAMU 2005-AR16 and DOES 1 TO 20, and each of them, plaintiffs allege as follows:

17. Plaintiffs repeat and re-plead paragraphs 1 to 16 herein as if set forth in full and incorporate the same herein by reference.

18. That upon information and belief, it is alleged, that in foreclosing upon plaintiffs' property, defendants, and each of them including all DOES, violated the *California Homeowners Bill of Rights* in the following manner:

      a)    Failed to provide notices to in violation of *Civil Code* §2924(a)(5);

      b)    Failed to provide a "Single Point of Contact" to plaintiffs to provide loan status in violation of *Civil Code* §2923(7), as plaintiff was in negotiations with defendants, and each of them, including all DOES to modify the subject loan;

-6-

1         c)    Failed to verify foreclosure documents for
2             accuracy before signing them in violation of
3             California Civil Code §2924.17;
4         d)    Failed to provide notices advising plaintiffs of
5             foreclosure alternatives in violation of *Civil*
6             *Code* §2924.9; and
7         e)    Failed to contact or exercise due diligence to
8             attempt to contact plaintiffs in order assess
9             plaintiffs' financial situation and to explore
10           options to foreclosure in violation of *Civil Code*
11           §2923.55(b)(2) and §2923.55(f).

12    19. The acts and omissions described in paragraph 18 above

13 were done by defendants and each of them subsequent the passage

14 to the effective date of the *California Homeowners Bill of*

15 *Rights*.

16    20. As a legal and proximate result of violation of the

17 *California Homeowners Bill of Rights* committed by defendants, and

18 each of them including all DOES, as described herein above,

19 plaintiffs' property as described in paragraph 5 above was

20 wrongfully and illegally foreclosed, legally and proximately

21 causing plaintiffs damages for the loss of the value of the

22 equity they owned in the subject property, according to proof at

23 time of trial.

24    21. As a legal and proximate result of the violation of the

25 *California Homeowners Bill of Rights* committed by defendants, and

26 each of them, including all DOES, as described herein above,

27 plaintiffs' property as described in paragraph 5 above was

28 wrongfully and illegally foreclosed, legally and proximately

-7-
FIRST AMENDED COMPLAINT

1  causing plaintiffs damages for emotional distress to plaintiffs,

2  according to proof at time of trial.

3      22. Plaintiffs are entitled to the greater amount treble

4  damages or $50,000.00 against defendants, and each of them,

5  including all DOES, as a consequence of the acts of defendants in

6  violation of the California Homeowners Bill of Rights were

7  intentionally and/or recklessly committed.

8      23. Plaintiffs are entitled to reasonable attorneys' fees as

9  provided by the provisions of the *California Homeowners Bill of*

10 *Rights.*

11                    <u>SECOND CAUSE OF ACTION</u>

12                    *WRONGFUL FORECLOSURE*

13     For a Second Cause of Action against defendants QUALITY LOAN

14 SERVICE CORPORATION; JP MORGAN CHASE BANK, NA; DEUTSCHE BANK

15 NATIONAL TRUST COMPANY; DEUTSCHE BANK NATIONAL TRUST COMPANY as

16 TRUSTEE FOR WAMU 2005-AR16 and DOES 1 TO 20,, and each of them,

17 plaintiffs alleges as follows:

18     24. Plaintiffs repeat and re-plead paragraphs 1 to 16 herein

19 as if set forth in full and incorporate the same herein by

20 reference.

21     25. At all times herein mentioned, plaintiffs were the

22 owners of the property described in paragraph 5 above and

23 entitled to possession of the property.

24     26. Defendants and each of them, including all DOES,

25 wrongfully initiated and proceeded with non-judicial foreclosure

26 proceedings against the property described in paragraph 5 above

27 as follows:

28             a)   Failed to give proper notices to plaintiffs of the

                              -8-
                    FIRST AMENDED COMPLAINT
LAW OFFICES OF STEVEN J. BARKIN

1          status of the subject loan, substitution of

2          trustees, assignment of beneficiaries, names and

3          addresses of the servicer of the loan, notice of

4          default, and notice of sale;

5     b)   Numerous violations of the *California Homeowners*

6          *Bill of Rights* as enumerated in the first cause of

7          action.

8     c)   Conducting a trustee's sale on December 16, 2013

9          pursuant to a void Notice of Default;

10     d)   Defendant QUALITY LOAN SERVICE CORPORATION

11          conducting a trustee's sale on December 16, 2013,

12          though defendant QUALITY LOAN SERVICE CORPORATION

13          was not a validly substituted trustee of the

14          beneficiary of the subject Deed of Trust.

15    27. The foregoing acts were intentionally committed by

16 defendants, and each of them, including all DOES with a conscious

17 disregard for the rights of the plaintiffs, and committed with

18 the intent to vex, harass, annoy and cause harm to plaintiffs.

19    25. Plaintiffs were vexed, harassed, annoyed and harmed by

20 the intentional acts described herein above committed by

21 defendants, and each of them, including all DOES.

22    28. As a legal and proximate result of the intentional acts

23 committed by defendants, and each of them including all DOES, as

24 described herein above, plaintiffs' property as described in

25 paragraph 5 above was wrongfully and illegally foreclosed,

26 legally and proximately causing plaintiffs to lose the value of

27 the equity they owned in the subject property.

28    29. As a legal and proximate result of the intentional acts

-9-

FIRST AMENDED COMPLAINT

1  committed by defendants, and each of them including all DOES, as

2  described herein above, plaintiffs' property as described in

3  paragraph 5 above was wrongfully and illegally foreclosed,

4  legally and proximately causing emotional distress to plaintiffs.

5  　　31. The compensatory damages plaintiffs have sustained

6  damages is in an amount in excess of the minimum jurisdictional

7  limits of the herein Court, the exact amount according to proof

8  at time of trial, together with interest as provided by law.

9  　　32. Plaintiffs are entitled to recover punitive damages from

10 defendants, and each of them, including all DOES as a result of

11 the wilful, oppressive and malicious conduct described in

12 paragraph 21. Said punitive damages should be in an amount

13 according to proof at time of trial to prevent defendants and

14 deterring others from committing such acts in the future.

15 　　33. Plaintiffs are entitled to reasonable attorneys' fees as

16 provided by the provisions of subject deed of trust.

17 　　　　　　　　THIRD CAUSE OF ACTION

18 　　　*Violation of Real Estate Settlement Procedures Act*

19 　　　　　　　　*12 U.S. Code § 2605*

20 　　For a Third Cause of Action against defendants and each of

21 them, including all DOES, plaintiffs allege as follows:

22 　　34. Plaintiff repeats and re-pleads paragraphs 1 through 28

23 as if set forth herein.

24 　　35. *12 U.S. Code § 2605* provides in pertinent part:

25 (e) Duty of loan servicer to respond to borrower inquiries

26 (1)　Notice of receipt of inquiry

27 　　(A) In general

28 　　If any servicer of a federally related mortgage loan receives a qualified written request from the

-10-
FIRST AMENDED COMPLAINT

borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

(B)    Qualified written request for purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—

(I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

(2)    Action with respect to inquiry no later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—

(A)    make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

(B)    after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(I) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

©    after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

-11-

FIRST AMENDED COMPLAINT

LAW OFFICES OF STEVEN J. RADKIN

1        (I) information requested by the borrower or an explanation of why the information

2        requested is unavailable or cannot be obtained by the servicer; and

3        (ii) the name and telephone number of an individual employed by, or the office or

4        department of, the servicer who can provide assistance to the borrower.

5    36. The subject Deed of Trust is a federally related

6    mortgage loan pursuant to *12 U.S. Code* §2605.

7    37. Plaintiffs have requested that defendants, and each of

8    them, including all DOES provide information regarding the

9    subject loan and Deed of Trust, to wit:

10        a)    Who was the beneficiary of the deed of trust that

11              was foreclosed upon?

12        b)    Who was the trustee of the deed of trust that was

13              foreclosed upon?

14        c)    Who was the servicer of the loan secured by the

15              deed of trust foreclosed upon?

16        d)    Who was the original beneficiary of the deed of

17              trust that was foreclosed upon?

18        f)    Who was the original trustee of the deed of trust

19              that was foreclosed upon?

20        g)    Who was the original servicer of the loan secured

21              by the deed of trust foreclosed upon?

22        h)    Who were the intervening beneficiaries of the deed

23              of trust that was foreclosed upon?

24        I)    Who were the intervening trustees of the deed of

25              trust that was foreclosed upon?

26        j)    Who were  the intervening servicers of the loan

27              secured by the deed of trust foreclosed upon?

28        k)    What was the specific reason that the NOTICE OF

-12-

FIRST AMENDED COMPLAINT

RESCISSION OF TRUSTEE'S DEED UPON SALE was recorded on January 25, 2011 -- other than ". . . the foreclosure sale which occurred on 6/22/2009 should not have proceeded."?

l)    Can you provide documentation that indicates when and in what manner the borrower was notified of any and all assignments of beneficiaries, substitutions of trustees and changes of servicers?

m)    What efforts were taken by any beneficiary, trustee, and/or servicer to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure?

n)    What if any foreclosure relief (modification or otherwise) was the borrower offered?

o)    Were any Notice(s) of Default recorded subsequent to February 27, 2009? If so, when was any such Notice of Default recorded and the recorder's office document number?

38. Defendants, and each of them, including all DOES, have refused to provide the information that has been requested.

39. In refusing to provide the information that was requested have effectively thwarted plaintiffs' intent to cure the default in the re-payment of the loan.

40. Presently there is confusion as to what entity holds the beneficial interest in the subject Deed of Trust and loan. The information that plaintiff requested will give plaintiff clarity as to this issue and assist plaintiff.

-13-

FIRST AMENDED COMPLAINT

42. Defendants, and each of them, including all DOES, have violated *12 U.S. Code* § 2605 by refusing to provide plaintiff with the information he has requested.

43. As a legal and proximate result of the violation of *12 U.S. Code* §2605 by defendants, and each of them, including all DOES, plaintiff has sustained damages as he has been thwarted in his efforts to cure the default in re-payment of the subject loan, which as resulted in additional interest accruing. The amount of such damages are in excess of the minimum jurisdiction of the herein Court, according to proof at time of trial, together with interest thereon, as provided by law.

44. As a legal and proximate result of the violation of *12 U.S. Code* §2605 by defendants, and each of them, including all DOES, plaintiff has sustained damages for emotional distress in that is in excess of the minimum jurisdiction of the herein Court, according to proof at time of trial, together with interest thereon, as provided by law.

45. Plaintiff believes that the violation of *U.S. Code* §2605 as described hereinabove, is part of a pattern and/or practice of noncompliance with *U.S. Code* §2605 by defendants, and each of them, including all DOES.

46. Pursuant to *U.S. Code* §2605(f)(1)(B) plaintiff is entitled to recover any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

47. Pursuant to *U.S. Code* §2605(f)(1)(B) plaintiff is entitled recover reasonable attorney's fees.

-14-

FIRST AMENDED COMPLAINT

FOURTH CAUSE OF ACTION

*Fraud*

For a First Cause of Action against defendants JP MORGAN CHASE BANK, N.A.,; DEUTSCHE BANK NATIONAL TRUST COMPANY; DEUTSCHE BANK NATIONAL TRUST COMPANY as TRUSTEE FOR WAMU 2005-AR16 and each of them, including all DOES, plaintiff alleges as follows:

48. Plaintiff repeats and repleads paragraphs 1 through 20 as if set forth herein.

49. Plaintiff discovered that the Assignment of Beneficial Interest in Deed of Trust to DEUTSCHE BANK NATIONAL TRUST COMPANY and/or  DEUTSCHE BANK NATIONAL TRUST COMPANY as TRUSTEE FOR WAMU 2005-AR16 on February 19, 2016 when plaintiff received a preliminary title report.

50. After learning on or about February 19, 2016 of the Assignment of Beneficial Interest in Deed of Trust to DEUTSCHE BANK NATIONAL TRUST COMPANY and/or  DEUTSCHE BANK NATIONAL TRUST COMPANY as TRUSTEE FOR WAMU 2005-AR16 plaintiff made inquiries of defendants, and each of them, including all DOES, to find out what entity or entities held the the beneficial interest of the subject Deed of Trust.

51. Defendant JP MORGAN CHASE BANK, N.A. falsely represented to plaintiff that the holder of the beneficial interest was JP MORGAN CHASE BANK, N.A.

52. DEUTSCHE BANK NATIONAL TRUST COMPANY falsely represented to plaintiff that the holder of the beneficial interest was JP MORGAN CHASE BANK, N.A.

53. As a result of the misrepresentations made by defendants, and each of them, including all DOES, plaintiffs

-15-

1  believe that the defendants have intentionally misrepresented to
2  plaintiffs information concerning the holder of the beneficial
3  interest in the subject Deed of Trust.
4      54. As a result of the misrepresentations made by
5  defendants, and each of them, including all DOES, plaintiffs
6  believe that defendant JP MORGAN CHASE BANK, N.A. wrongfully and
7  illegally assigned the beneficial interest of the subject Deed of
8  Trust to defendant DEUTSCHE BANK NATIONAL TRUST COMPANY as
9  TRUSTEE FOR WAMU 2005-AR16 and then falsely represented to
10 plaintiff that the holder of the beneficial interest was JP
11 MORGAN CHASE BANK, N.A.  55. The intentional misrepresentation
12 regarding the identity of the holder of the beneficial interests
13 of the subject Deed of Trust by defendants and each of them,
14 including all DOES, have thwarted plaintiff's intent and ability
15 to cure the default in the re-payment of the loan secured by the
16 Deed of Trust and has legally and proximately caused plaintiff to
17 sustain damages as plaintiff has been prevented from curing the
18 default and additional interest has been accruing on the unpaid
19 balance, further escrow advances have accrued, further corporate
20 advances have accrued as well as attorney fees and costs, and any
21 other ancillary costs in an amount in excess of the minimum
22 jurisdiction of the herein Court, according to proof at time of
23 trial.
24     55. The intentional misrepresentations of defendants and
25 each of them, were made to keep plaintiff in a state of confusion
26 as to the status of the subject Deed of Trust and the loan it
27 secured. The conduct of defendants, and each of them, including
28 all DOES was done with a conscious disregard for their rights and

-16-

1 interest of plaintiff, and with the intent to cause plaintiff
2 harm, thereby rendering said conduct malicious.
3    56. Defendants and each of them, including all DOES, should
4 be assessed punitive damages as a legal and proximate cause of
5 their intentional and malicious conduct in an amount so as to
6 punish said conduct and deter defendants from so acting in the
7 future.

8                        FIFTH CAUSE OF ACTION
9                            *Quiet Title*
10              *Code of Civil Procedure* §760.010 et seq.
11    For a Fifth Cause of Action against defendants JP MORGAN
12 CHASE BANK, NA; DEUTSCHE BANK NATIONAL TRUST COMPANY; DEUTSCHE
13 BANK NATIONAL TRUST COMPANY as TRUSTEE FOR WAMU 2005-AR16 and
14 DOES 1 TO 20, and each of them, plaintiffs allege as follows:
15    57. Plaintiffs incorporate herein by reference the
16 allegations made in paragraphs 1 through 39 as though fully set
17 forth herein.
18    58. Plaintiffs seek to quiet title against the claims of
19 defendants based upon the following:
20         a) The foreclosure of the subject property
21         conducted by defendants and each of them,
22         hereinabove described was wrongful and void.
23    59. Defendants do not legally own, possess or otherwise hold
24 any  right, title, estate, lien, or interest in the hereinafter
25 described PROPERTY adverse to plaintiff's title and their claims,
26 and each of them, constitute an illegal cloud on plaintiff's
27 title to the subject property.
28    60.  Plaintiffs seek an order quieting title of the subject

-17-

1 | property in their names as of December 16, 2013, that being the
2 | date of the invalid trustee's sale of the subject property.

3 |     61. Plaintiff requests that the Court award plaintiff
4 | reasonable attorney's fees.

5 | <u>SIXTH CAUSE OF ACTION</u>

6 | *Injunctive Relief*

7 | *Civil Code* 2924 *et seq.*

8 |     For a Fifth Cause of Action against defendants QUALITY LOAN
9 | SERVICE CORPORATION; JP MORGAN CHASE BANK, NA; DEUTSCHE BANK
10 | NATIONAL TRUST COMPANY; DEUTSCHE BANK NATIONAL TRUST COMPANY as
11 | TRUSTEE FOR WAMU 2005-AR16 and DOES 1 TO 20, and each of them,
12 | plaintiffs allege as follows:

13 |     62. Plaintiffs incorporate herein by reference the
14 | allegations made in paragraphs 1 through 39 as though fully set
15 | forth herein.

16 |     63. As a result of defendants' conduct, plaintiffs have
17 | been thwarted in their attempts to resolve their homeowner's loan
18 | debt with defendants, and foreclosure proceedings have been
19 | instituted against the subject property and a trustees' sale has
20 | been held, wrongfully depriving plaintiffs of t heir property.

21 |     64. Plaintiffs request that the Court issue temporary
22 | restraining order enjoining defendants from any attempt to evict
23 | plaintiffs from the subject property, and/or from any attempt to
24 | sell the subject property or otherwise transfer title, and an
25 | order to show cause re a preliminary injunction.

26 |     WHEREFORE plaintiffs PAUL LEE and YAR YEON YANG pray damages
27 | against QUALITY LOAN SERVICE CORPORATION; JP MORGAN CHASE BANK,
28 | NA; DEUTSCHE BANK NATIONAL TRUST COMPANY; DEUTSCHE BANK NATIONAL

-18-

FIRST AMENDED COMPLAINT

TRUST COMPANY as TRUSTEE FOR WAMU 2005-AR16 and DOES 1 TO 20, and each of them, as follows:

1.   Compensatory damages according to proof at time of trial, together with interest thereon as provided by law;

2.   Punitive Damages according to proof at time of trial;

3.   An order quieting title of the subject property, which determines that plaintiffs are and have been the owners in fee simple of the subject property as of December 13, 2013 and that defendants have had no interest in the subject property adverse to the plaintiff at any time from December 16, 2013.

3.   A temporary restraining order enjoining from any attempt to evict plaintiffs from the subject property, and/or from any attempt to sell the subject property or otherwise transfer title, and an order to show cause re a preliminary injunction;

4.   Reasonable attorneys fees;

5.   Costs of suit; and

6.   For such other relief as the Court deems just and proper.

Dated: July 7, 2016

**LAW OFFICES OF STEVEN J. BARKIN**


By:_____
        Attorneys for plaintiffs
        PAUL LEE AND YAR YEON YANG

-19-

FIRST AMENDED COMPLAINT

LAW OFFICES OF STEVEN J. BARKIN

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on July 7, 2016 at Los Angeles, California.

///

_____
PAUL LEE

///

**VERIFICATION**

I am the attorney for plaintiff in this matter. Plaintiff YAR YEON YANG is absent from Los Angeles County, the county wherein my office is located. in the above-entitled action. I have read the herein complaint, and I am informed and believe the matters therein to be true and on that ground allege that the matters stated therein are true. Executed on July 7, 2016 at Los Angeles, California.

///

_____
STEVEN J. BARKIN

-20-
FIRST AMENDED COMPLAINT
LAW OFFICES OF STEVEN J. BARKIN

## PROOF OF SERVICE BY MAIL

**LOS ANGELES COUNTY**

**STATE OF CALIFORNIA**

I am over 18 years of age and am employed in the County of Los Angeles, my business address being 3700 Wilshire Boulevard, Suite 940, Los Angeles, CA 90010-3088

On July __, 2016 I served a copy of the attached FIRST AMENDED COMPLAINT upon interested parties in this action by placing a true copy thereof, enclosed in a sealed envelope with postage prepaid, addressed as follows:

Matthew Learned
McCARTHY & HOLTHUS, LLP
1770 Fourth Avenue
San Diego, CA 92101

William Idleman
PIB LAW
695 Town Center Drive, 16th Floor
Costa Mesa, CA 92626

The envelope containing the above-entitled document were deposited with the United States Postal Service with postage fully prepaid at Los Angeles, California

I declare, under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.. Executed  on July __, 2016 at Los Angeles, California.

_____
STEVEN J. BARKIN

Document filed by DataTree LLC via its proprietary imaging and delivery system  Co,    . All rights reserved

▲                 **This page is part of your document - DO NOT DISCARD**                 ▲

**05 2633054**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
11/01/05 AT 08:00am**

**TITLE(S) :**  _____

▲                                                                              ▲

|||||||||||||||||||||||||||||||||||||||||||||
**L E A D     S H E E T**

**FEE**

| FEE $10 | **H** |
| :---: | :---: |
|  | **2** |

**CODE
20**

**CODE
19**

**CODE
9** ____

D.T.T.
1/55 · 00
3/50 · 00

NOTIFICATION SS85 $4 ®

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**          **Number of AIN's Shown**

4270 · 012 · 037                              001

▲           THIS FORM IS NOT TO BE DUPLICATED



Document ...fied by DataTree LLC via its proprietary imaging and delivery system, ....tc. All rights reserved

11/1/05

2

**RECORDING REQUESTED BY**
The Heritage Escrow Company

**AND WHEN RECORDED MAIL TO.**
**AND MAIL TAX STATEMENT TO:**
Paul K. Lee and Yaeyeon Yang
1231 18th Street #1
Santa Monica, CA 90404

Order No. LA0532992
Escrow No. 503-12392-MF
Parcel No. 4276-012-037

05  2633054

4276-012-037

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $1,155.00 and CITY $3,150.00
__X__ computed on full value of property conveyed, or
_____ computed on full value less liens or encumbrances remaining at the time of sale.
_____ unincorporated area:      __x__ City of Santa Monica

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Boris Shimanovsky, an unmarried man**

hereby GRANTS to Paul K. Lee and Yaeyeon Yang, Husband And Wife As
**Community Property with right of survivorship**

the following described real property in the County of Los Angeles, State of California:

**As per Exhibit "A" attached hereto and made a part hereof.**

Date   October 10, 2005

Boris Shimanovsky

STATE OF CALIFORNIA      }
                         } S.S.
COUNTY OF   Los Angeles  }

On   10/10/05   , before me,   Mark Fishman   , a
Notary Public in and for said County and State, personally appeared Boris Shimanovsky

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

Signature

MARK FISHMAN
COMM. #1561599
Notary Public - California
Los Angeles County
My Comm. Expires Mar. 19, 2009

Documents ...ed by DataTree LLC via it's proprietary imaging and delivery system. 2. All rights reserved

11/1/05 

ORDER NO.  LA0532992

EXHIBIT "A"

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

A)  AN UNDIVIDED 1/6 INTEREST IN LOT 1 OF TRACT NO. 49337, IN THE CITY OF SANTA MONICA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1169, PAGES 42 AND 43, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 TO 6, INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED FEBRUARY 13, 1991, AS INSTRUMENT NO. 91-220733, IN SAID OFFICE OF THE COUNTY RECORDER.

B)  UNIT 1, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN REFERRED TO ABOVE.

PARCEL 2:

THE EXCLUSIVE AND NON-SEVERABLE EASEMENT TO USE BALCONY SPACES 1C FOR BALCONY PURPOSES, AND PARKING SPACES P1, P2, P3 AND P4 FOR VEHICULAR PARKING PURPOSES, AND SAID SPACES ARE SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE.

05  2633054

Document by DataTree LLC via it's proprietary imaging and delivery system  Copy        All rights reserved

▲                    This page is part of your document - DO NOT DISCARD                    ▲

**05 2633055**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**11/01/05 AT 08:00am**

# TITLE(S) :

▲                                                                                            ▲

L E A D    S H E E T

FEE                                                                          D.T.T.



FEE $    H
DAF $
C-20                          23

CODE
20

CODE
19

CODE
9

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.        Number of AIN's Shown

▲                    THIS FORM IS NOT TO BE DUPLICATED                    ▲

# Equity Title

Documer:    filed by DataTree LLC via it's proprietary imaging and deliver system 08:    All rights reserved

11/1/05

Recording Requested By:
WASHINGTON MUTUAL BANK

Return To:
WASHINGTON MUTUAL BANK
2210 ENTERPRISE DRIVE
FLORENCE, SC 29501
DOC OPS M/S FSCE 440

05  2633055

2

Prepared By
ANTIONETTE MARIANO

*LA0532992*

ZCA1
M07

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

3060835547-073

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined
in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this
document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  OCTOBER 25, 2005
together with all Riders to this document
(B) "Borrower" is  PAUL K. LEE AND, YAEYEON YANG, HUSBAND AND WIFE AS
COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP

Borrower's address is  1231 18TH STREET,UNIT NO.1, SANTA MONICA, CA 90404
                          Borrower is the trustor under this Security Instrument.
(C) "Lender" is  WASHINGTON MUTUAL BANK, FA

Lender is a  FEDERAL SAVINGS BANK
organized and existing under the laws of  THE UNITED STATES OF AMERICA

CALIFORNIA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3005 1/01

 –6(CA) (0207)

Page 1 of 15        Initials: PKL/yy
VMP MORTGAGE FORMS – (800)521-7291



Document:    ed by DataTree LLC via its proprietary imaging and delivery system.    ', All rights reserved

11/1705

Lender's address is 2273 N. GREEN VALLEY PARKWAY, SUITE 14, HENDERSON, NV 89014
Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is CALIFORNIA RECONVEYANCE COMPANY, A CALIFORNIA CORP

(E) "Note" means the promissory note signed by Borrower and dated OCTOBER 25, 2005
The Note states that Borrower owes Lender SEVEN HUNDRED EIGHTY SEVEN THOUSAND
FIVE HUNDRED AND 00/100                                                  Dollars
(U.S $    787,500.00    ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than NOVEMBER 01, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [x] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq ) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

—6(CA) (0207)                    Page 2 of 15                    Initials _____    Form 3005 1/01

05 2633055

Document    ...ed by DataTree LLC via its proprietary imaging and ...    ... All rights reserved

11/1/05

4

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the    COUNTY    of   LOS ANGELES
       [Type of Recording Jurisdiction]       [Name of Recording Jurisdiction]
THE LEGAL DESCRIPTION IS ATTACHED HERETO AS A SEPARATE EXHIBIT AND IS MADE A PART HEREOF.

SEE EXHIBIT "A" ATTACHED

Parcel ID Number:    4276-012-037    which currently has the address of
1231 18TH STREET , UNIT NO. 1    [Street]
SANTA MONICA    [City] , California 90404    [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property "

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows

    1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

-6(CA) (0207)    Page 3 of 15    Initials    Form 3005 1/01

05 2633055

Document 6.    by DataTree LLC via it's proprietary imaging and delivery system. System.    All rights reserved

11/1/05

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10 These items are called "Escrow Items." At origination or at any time during the

05 2633055

Document ... ed by DataTree LLC via it's proprietary imaging and c... ... All rights reserved

11/1/05

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials: _____

(05 2633055

Documents of . by DataTree LLC via it's proprietary imaging and delivery system. Copyright . All rights reserved

11/1/05

7

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower. (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

—6(CA) (0207)                    Page 6 of 15                    Initials _____          Form 3005 1/01

05  2633055

Document 9.    J by DataTree LLC via it's proprietary imaging and delivery system. Copying    All rights reserved

11/1/05

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Initials:

05 2633055

Documen        ßed by DataTree LLC. via it's proprietary imaging and delivery system. Copy        . All rights reserved

11/1/05

9

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Initials _____

05 2683055

Documer    Filed by DataTree LLC. via its proprietary imaging and delivery system. Cop    nc. All rights reserved

11/1/05

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or

-6(CA) (0207)                                    Page 9 of 15                    Initials:          Form 3005 1/01

05 2688055

Documents ...ed by DataTree LLC via it's proprietary imaging and deli... ...... ...ll rights reserved

11/1/05

loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to

---

ᵂᴹᴾ‑6(CA) (0207)                    Page 10 of 15                    Initials _____    Form 3005 1/01

05  2633055

Document    led by DataTree LLC via it's proprietary imaging and deli...    © ...all rights reserved

11/1/05

]2

make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred

05 2638055

Document... led by DataTree LLC via it's proprietary imaging and deli... ...ll rights reserved

11/1/05

in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual

05 2683055

Docume        ovided by DataTree LLC via it's proprietary imaging and deli       . .  All rights reserved

11/1/05

knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee.

05  2633055

Documt       ided by DataTree LLC via it's proprietary imaging and delivery system. Co       ents. All rights reserved.

11/1/05

ZCA2

Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                                        -Borrower
                              PAUL K. LEE

_____     _____ (Seal)
                                                        -Borrower
                              YAEYEON YANG

_____ (Seal)     _____ (Seal)
          -Borrower                     -Borrower

_____ (Seal)     _____ (Seal)
          -Borrower                     -Borrower

_____ (Seal)     _____ (Seal)
          -Borrower                     -Borrower

05  2633055

WMP  —6(CA) (0207)                 Page 14 of 15                 Form 3005 1/01

Docume    ded by DataTree LLC via its proprietary imaging and delivery syster  ©20    ee, All rights reserved

11/1/05

State of California
County of  LOS ANGELES
}  ss.

On  10|25|05                        before me,  MarkFishmar
                                                    personally appeared

PAUL K. LEE, YAEYEON YANG

personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.
WITNESS my hand and official seal.

                                                            (Seal)

MARK FISHMAN
COMM. #1561598
Notary Public - California
Los Angeles County
My Comm. Expires Mar. 19, 2009

—6(CA) (0207)                    Page 15 of 15                    Form 3005 1/01

Initials _____

Docume    ided by DataTree LLC via its proprietary imaging and delivery system. Co    200□. All rights reserved

11/1/05

17

R2US
M07

3060835547-073

# FIXED/ADJUSTABLE RATE RIDER
### (LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this         25TH         day of OCTOBER, 2005         , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to

WASHINGTON MUTUAL BANK, FA

("Lender") of the same date and covering the property described in the Security Instrument and located at:

1231 18TH STREET, UNIT NO.1
SANTA MONICA, CA 90404
(Property Address)

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of       6.000       %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of   NOVEMBER 01, 2012         , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family - Fannie Mae Uniform Instrument                                          Form 3187 6/01
ⓋⓂⓅ-168R (0401)
Page 1 of 4      Initials: _[signature]_
VMP Mortgage Solutions
(800)521-7291

Document.        ided by DataTree LLC via its proprietary imaging and delivery system. Copy   10:  All rights reserved

11/1/05

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U S dollar—denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding    TWO AND 25/100                    percentage points (      2.250    %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one—eighth of one percentage point (0.125%) Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.000    % or less than    2.250           %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than     11.000    %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

⚫®-168R (0401)                    Page 2 of 4                    Initials: _____     Form 3187 6/01

05 2633055

Docum... ...vided by DataTree LLC via it's proprietary imaging and deli... ...ass. All rights reserved.

11/1/05

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

-168R (0401)                    Page 3 of 4                    Initials: _____    Form 3187 6/01

05 2688055

Documer    ided by DataTree LLC via its proprietary imaging and delivery system. Cop    00's. All rights reserved

11/1/05

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_____ (Seal)
                        —Borrower

_____ (Seal)
                        —Borrower
PAUL K. LEE

_____ (Seal)
                        —Borrower

_____ (Seal)
                        —Borrower
YAEYEON YANG

_____ (Seal)
                        —Borrower

_____ (Seal)
                        —Borrower

_____ (Seal)
                        —Borrower

_____ (Seal)
                        —Borrower

⊗ -16BR (0401)            Page 4 of 4            Form 3187 6/01

Docu    rovided by DataTree LLC via its proprietary imaging and delivery system    200  All rights reserved

11/1/0

Z

# CONDOMINIUM RIDER

BRUS                                                        3060835547-073
M07

THIS CONDOMINIUM RIDER is made this    25TH    day of  OCTOBER     2005  .
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of
Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the
"Borrower") to secure Borrower's Note to

WASHINGTON MUTUAL BANK, FA

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at.

  1231 18TH STREET, UNIT NO.1, SANTA MONICA, CA 90404

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a
condominium project known as:

  TBD

[Name of Condominium Project]

(the "Condominium Project"). If the owners association or other entity which acts for the
Condominium Project (the "Owners Association") holds title to property for the benefit or use of
its members or shareholders, the Property also includes Borrower's interest in the Owners
Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

A. Condominium Obligations. Borrower shall perform all of Borrower's obligations under
the Condominium Project's Constituent Documents The "Constituent Documents" are the: (i)
Declaration or any other document which creates the Condominium Project; (ii) by-laws; (iii) code
of regulations; and (iv) other equivalent documents. Borrower shall promptly pay, when due, all
dues and assessments imposed pursuant to the Constituent Documents.

MULTISTATE CONDOMINIUM RIDER – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Ⓒ–8R (0008)        Form 3140 1/01
Page 1 of 3        Initials: _____
VMP MORTGAGE FORMS – (800)521-7291

05  2633055

Document ~~imaged by DataTree LLC via it's proprietary imaging and delivery system~~   ~~JFC   All rights reserved.~~

11/1/05

Z

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy on the Condominium Project which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, from which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property, whether of the unit or of the common elements, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Condominium Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

VMP®-8R (0008)                    Page 2 of 3                    Initials: _____        Form 3140 1/01

Document          ed by DataTree LLC via it's proprietary imaging and delivery system. Copyr     © All rights reserved.

11/1/05

*23*

F. **Remedies.** If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)        _____ (Seal)
          -Borrower                              -Borrower
                                        PAUL K. LEE

_____ (Seal)        _____ (Seal)
          -Borrower                              -Borrower
                                        YAEYEON YANG

_____ (Seal)        _____ (Seal)
          -Borrower                              -Borrower

_____ (Seal)        _____ (Seal)
          -Borrower                              -Borrower

⑩ᵣ-8R (0008)              Page 3 of 3              Form 3140 1/01

05 2633055

Documents. __ ad by DataTree LLC vo it's proprietary imaging and delivery system. Copyri __ All rights reserved

11/1/05

24

ORDER NO.. LA0532992

EXHIBIT "A"

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

A) AN UNDIVIDED 1/6 INTEREST IN LOT 1 OF TRACT NO. 49337, IN THE CITY OF SANTA MONICA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1169, PAGES 42 AND 43, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 TO 6, INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED FEBRUARY 13, 1991, AS INSTRUMENT NO. 91-220733, IN SAID OFFICE OF THE COUNTY RECORDER.

B) UNIT 1, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN REFERRED TO ABOVE.

PARCEL 2:

THE EXCLUSIVE AND NON-SEVERABLE EASEMENT TO USE BALCONY SPACES 1C FOR BALCONY PURPOSES, AND PARKING SPACES P1, P2, P3 AND P4 FOR VEHICULAR PARKING PURPOSES, AND SAID SPACES ARE SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE.

05 2633055

Document viewed by DataTree LLC via its proprietary imaging and delivery system. Copyright. All rights reserved.

**This page is part of your document - DO NOT DISCARD**



## 20090277924



Pages:
0003

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

02/27/09 AT 08:00AM

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |



**L E A D S H E E T**



200902270240006

00000104361

001983977

SEQ:
20

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

Recording requested by:
Quality Loan Service Corp

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101


02/27/2009
*20090277924*

Space above this line for Recorder's use

TS No.: CA-09-253751-ED          Loan No.: 3060835547

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account (normally five business days prior to the date set for the sale of your property). No sale may be set until three months from the date this notice of default is recorded (which date of recordation appears on this notice). This amount is **$17,724.50** as of **2/26/2009** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have the pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Washington Mutual Bank, FA**
**C/O Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711**

TS No.: CA-05-253751-ED
Loan No.: 3060835547
**Notice of Default and Election To Sell Under Deed of Trust**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated 10/25/2005, executed by PAUL K. LEE AND, YAEYEON YANG, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP, as Trustor, to secure certain obligations in favor of WASHINGTON MUTUAL BANK, FA, as beneficiary, recorded 11/1/2005, as Instrument No. 05 2633055, in Book xxx, Page xxx of Official Records in the Office of the Recorder of LOS ANGELES County, California describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including 1 NOTE(S) FOR THE ORIGINAL sum of $767,500.00, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of principal and interest plus impounds and advances which became due on 11/1/2008 plus amounts that are due or may become due for the following: late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustees fees, and any attorney fees and court costs arising from or associated with beneficiaries effort to protect and preserve its security must be cured as a condition of reinstatement.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

The Beneficiary or its designated agent declares that it has contacted the borrower, tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary or authorized agent, or is otherwise exempt from the requirements of § 2923.5.

Dated: 2/26/2009       **Quality Loan Service Corp., AS AGENT FOR BENEFICIARY**
BY: LSI Title Company

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.



**This page is part of your document - DO NOT DISCARD**

## 20090526080





Pages:
0004

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**04/13/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 17.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 17.00 |



LEADSHEET

200904130140007

00000346390

002056467

SEQ:
18

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED





E33P1                                                    T35

Recording requested by:

When recorded mail to:

Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101
619-645-7711



04/13/2009

*20090526060*

Space above this line for recorders use

TS # CA-09-253751-ED        Order # 090148089-CA-DCI        Loan # 3060835547

## Substitution of Trustee

WHEREAS, PAUL K. LEE AND, YAEYEON YANG, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP was the original Trustor, CALIFORNAI RECONVEYANCE COMPANY, A CALIFORNIA CORP was the original Trustee, and WASHINGTON MUTUAL BANK, FA was the original Beneficiary under that certain Deed of Trust dated 10/25/2005 and recorded on 11/1/2005 as Instrument No. 05 2633055, in book xxx, page xxx of Official Records of LOS ANGELES County, CA; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes QUALITY LOAN SERVICE CORPORATION ,as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Page 1

Substitution of Trustee - CA
TS # CA-09-253751-ED
Page 2

Dated: 2/26/2009

J.P. Morgan Chase Bank, National Association

By: _____
    Eric Tate        Attorney in Fact

State of  mN  )
County of Dakota )

On 3/5/2009  Date before me, ___Ashley Olson_____ a notary public, personally
appeared ___Eric Tate_____ who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)



Ashley Elizabeth Olson
NOTARY PUBLIC - MINNESOTA
MY COMMISSION
EXPIRES JAN. 31, 2014

## Affidavit of Mailing
### for Substitution of Trustee By Code

TS No.: **CA-09-253751-ED**
Trustor: PAUL K. LEE AND, YAEYEON YANG, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP

I, Adelia Herrera, declare: That I am an employee of **Quality Loan Service Corp.**, an agent for beneficiary, whose business address is:

    2141 5th Avenue
    San Diego, CA 92101

I am over the age of eighteen years and in accordance with California Civil Code Section 2934, I caused a copy of the attached Substitution of Trustee to be mailed, in the manner provided in Section 2924(b) of the Civil Code of the State of California, to the trustee of record under the Deed of Trust described in said Substitution and to all persons to whom a copy of the Notice of Default would be required to be mailed by the provisions of said section.

I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Diego, CA on 3/10/2009.


Adelia Herrera

Documen... ...ated by DataTree LLC via it's proprietary imaging and delivery system. Copyright ?    ...ights reserved



**This page is part of your document - DO NOT DISCARD**



## 20090975735



Pages:
0004

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/29/09 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 15.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 15.00 |



**L E A D S H E E T**



200906290190014

00000780207



002179062

**SEQ:**
**16**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T35

Docume...  ...rovided by DataTree LLC via it's proprietary imaging and delivery system.  Copyrigh...  ...ll rights reserved.

Trustee's Deed Upon Sale
1    P a g e

Recording requested by:

When recorded mail to:

Washington Mutual Bank, FA
7255 Baymeadows Way
Jacksonville, FL 32256

Forward tax statements to the address given above

06/29/2009

*20090975735*

_____
Space above this line for recorders use

TS # CA-09-253751-ED              Order # 090148089-CA-DCI              Loan # 3060835547

# Trustee's Deed Upon Sale

A.P.N.: 4276-012-037                                   Transfer Tax: $0.00

The undersigned grantor declares:
The grantee herein IS the foreclosing beneficiary.
The amount of the unpaid debt together with costs was:      $825,236.75
The amount paid by the grantee at the trustee sale was:     $825,236.75
The documentary transfer tax is:                            None
Said property is in the City of:  SANTA MONICA, County of LOS ANGELES

**QUALITY LOAN SERVICE CORPORATION** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**J.P. Morgan Chase Bank, National Association**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of  LOS ANGELES, State of California, described as follows:
SEE ATTACHED  Exhibit A

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by  PAUL K. LEE AND, YAEYEON YANG, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP, as trustor, dated 10/25/2005,  and recorded on 11/1/2005 as instrument number 05 2633055, in Book xxx, Page xxx of Official Records in the office of the Recorder of  LOS ANGELES, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on 2/27/2009, instrument no 09-277924, Book , Page , of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b

Docum      wided by DataTree LLC) via its proprietary imaging and delivery system. Copyrigh      ll rights reserved.

3

Trustee's Deed Upon Sale
2    P a g e

Default occurred as set forth in a Notice of Breach and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Breach and Election to Sell or the personal delivery of the copy of the Notice of Breach and Election to Sell and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on **6/22/2009** at the place named in the Notice of Sale, in the County of **LOS ANGELES**, California, in which the property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said trustee the amount being **$825,236.75** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

Date: **6/24/2009**                    **QUALITY LOAN SERVICE CORPORATION**

By: _____

_____
**Karla Sanchez, Assistant Secretary**

State of California    )
County of San Diego)

On **6/25/09** before me, **Michelle Nguyen** a notary public, personally appeared **Karla Sanchez**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
**Michelle Nguyen**

MICHELLE NGUYEN
COMM. #1685032
NOTARY PUBLIC ● CALIFORNIA
SAN DIEGO COUNTY
Comm. Exp. MAY 8, 2010

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Ex... ...s provided by DataTree LLC via it's proprietary imaging and delivery system. Copr... ...005. All rights reserved.

ORDER NO: 090148089                                          GUARANTEE NO: 27-092-01-219802

# EXHIBIT A

## LEGAL DESCRIPTION

REF. NO. CA-09-253751-ED

A CONDOMINIUM COMPRISED OF:

PARCEL 1:

A) AN UNDIVIDED 1/6 INTEREST IN LOT 1 OF TRACT NO. 49337, IN THE CITY OF SANTA MONICA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1169, PAGES 42 AND 43, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT UNITS 1 TO 6, INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED FEBRUARY 13, 1991, AS INSTRUMENT NO. 91-220733, IN SAID OFFICE OF THE COUNTY RECORDER.

B) UNIT 1, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN REFERRED TO ABOVE.

PARCEL 2:

THE EXCLUSIVE AND NON-SEVERABLE EASEMENT TO USE BALCONY SPACES 1C FOR BALCONY PURPOSES, AND PARKING SPACES P1, P2, P3 AND P4 FOR VEHICULAR PARKING PURPOSES, AND SAID SPACES ARE SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE.

This page is part of your document - DO NOT DISCARD



## 20110131315



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

01/25/11 AT 08:00AM

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



LEADSHEET



201101250110007

00003554006



003121230

SEQ:
13

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

t35



RECORDING REQUESTED BY:
JPMorgan Chase Bank, N.A.
7301 Baymeadows Way
Jacksonville, FL 32256

WHEN RECORDED MAIL TO:
**Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**

---

TS #: CA-09-253751-ED                         SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF RESCISSION OF TRUSTEE'S DEED UPON SALE

This Notice of Rescission is made this day 1/21/2011 with respect to the following:

1.) **THAT QUALITY LOAN SERVICE CORPORATION** is the duly appointed Trustee under that certain Deed of Trust dated **10/25/2005** and recorded 11/1/2005 as instrument number 05 2633055 in book xxx page xxx wherein **PAUL K. LEE AND, YAEYEON YANG, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP** is/are named as Trustor(s), **CALIFORNAI RECONVEYANCE COMPANY, A CALIFORNIA CORP** is named as trustee, and **WASHINGTON MUTUAL BANK, FA**, is named as beneficiary;

2.) **THAT J.P. Morgan Chase Bank, National Association** is the beneficiary of record under that Deed of Trust ;

3.) **THAT THE DEED OF TRUST** encumbers real property located in the County of LOS ANGELES, State of CA, described as follows:

**SEE ATTACHED**

APN #: 4276-012-037

4.) **THAT BY VIRTUE OF** a default under the terms of the Deed of Trust referenced in paragraph one (1), the beneficiary did declare a default, as set forth in a Notice of Default which recorded on 2/27/2009 as instrument number **09-277924** in book , page in the office of the Recorder of LOS ANGELES County, State of CA;

5.) **THAT THE TRUSTEE** desires to rescind the Trustee's Deed Upon Sale which recorded on **6/29/2009** as instrument number 09-975735 because the foreclosure sale which occurred on 6/22/2009 should not have proceeded. The Beneficiary agrees with the necessity of cancelling the Trustee's sale and rescinding the issued and recorded Trustee's Deed Upon Sale;

6.) **THAT THE EXPRESS PURPOSE** of this Notice of Rescission is to return the priority and existence of all title and lien holders to the status quo-ante as existed prior to the trustee's sale;

NOW THEREFORE, THE UNDERSIGNED HEREBY RESCINDS THE TRUSTEE'S SALE AND PURPORTED TRUSTEE'S DEED UPON SALE AND HEREBY ADVISES ALL PERSONS THAT THE TRUSTEE'S DEED UPON SALE DATED 6/24/2009 AND RECORDED 6/29/2009 AS INSTRUMENT NUMBER 09-975735 IN THE COUNTY OF LOS ANGELES , STATE OF CA, FROM QUALITY LOAN SERVICE CORPORATION (TRUSTEE) TO J.P. Morgan Chase Bank, National Association (GRANTEE) IS HEREBY RESCINDED, AND

3

– IS AND SHALL BE OF NO FORCE AND EFFECT WHATSOEVER. THE DEED OF TRUST DATED
**10/25/2005** , RECORDED 11/1/2005 AS INSTRUMENT NUMBER 05 2633055 IN BOOK xxx , PAGE xxx , IS
IN FULL FORCE AND EFFECT.

Dated: 1/21/11

QUALITY LOAN SERVICE CORPORATION



By: Rochelle Matkin, Assistant Vice President

State of:    **California**    )
                              ) ss.
County of:    **San Diego**    )

On **1/21/2011** before me, **Sharina L. Guzman** a notary public, personally appeared **Rochelle Matkin**, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **California** that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.          (Seal)

Sharina L. Guzman

SHARINA L. GUZMAN
Commission # 1820561
Notary Public - California
San Diego County
My Comm. Expires Oct 28, 2012

Documents p.       * by DataTree LLC via its proprietary imaging and delivery system. Copyri,        'll rights reserved.

**This page is part of your document - DO NOT DISCARD**

## 20110154976




**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/28/11 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201101280150002

00003675190



003129790

**SEQ:**
**20**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

Documents pr...    by DataTree LLC via its proprietary imaging and delivery system. Copyrig...    ll rights reserved.

Recording requested by:
Quality Loan Service Corp.



01/28/2011

*20110154976*

When recorded mail to:
Quality Loan Service Corp.
2141 5th Avenue
San Diego, CA 92101

TS #: CA-09-253751-ED
Order #: 090148089-CA-DCI

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/25/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time of the initial publication of the Notice of Sale) reasonably estimated to be set forth below. The amount may be greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

| | |
|---|---|
| Trustor(s): | **PAUL K. LEE AND, YAEYEON YANG, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP** |
| Recorded: | 11/1/2005 as Instrument No. 05 2633055 in book xxx, page xxx of Official Records in the office of the Recorder of LOS ANGELES County, California; |
| Date of Sale: | 2/24/2011 at 10:30 AM |
| Place of Sale: | At the West side of the Los Angeles County Courthouse, directly facing Norwalk Blvd., 12720 Norwalk Blvd., Norwalk, CA 90650 |

Amount of unpaid balance and other charges: **$904,634.01**
The purported property address is:    **1231 18TH STREET UNIT NO. 1
SANTA MONICA, CA 90404**

Assessor's Parcel No. 4276-012-037

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, please refer to the referenced legal description for property location. In the event no common address or common designation of the property is provided herein directions to the location of the property may be obtained within 10 days of the date of first publication of this Notice of Sale by sending a written request to JPMorgan Chase Bank, N.A. 7301 Baymeadows Way Jacksonville FL 32256

Documents b..    ' by DataTree LLC via it's proprietary imaging and delivery system. Copyri,.    ll rights reserved

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;

[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 .

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

**If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

Date: 1/26/11

**Quality Loan Service Corp.**
**2141 5th Avenue**
**San Diego, CA 92101**
**619-645-7711 For NON SALE information only**
**Sale Line: 714-730-2727 or Login to: www.fidelityasap.com**
**Reinstatement Line: 619-645-7711**

Quality Loan Service Corp. by: Christine  Bitanga, as Authorized Agent.

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

Documents , d by DataTree LLC via it's proprietary imaging and delivery system. Copyri All rights reserved



**This page is part of your document - DO NOT DISCARD**

## 20121661996




**Pages: 0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**11/01/12 AT 08:00AM**

| | | |
|---|---|---|
| FEES: | | 18.00 |
| TAXES: | | 0.00 |
| OTHER: | | 0.00 |
| PAID: | | 18.00 |



**L E A D S H E E T**



201211010150015

00006695558


004397384

**SEQ:
11**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

135

Documen...   1 by DataTree LLC via it's proprietary imaging and delivery system. Cop.   All rights reserved

Recording requested by:

When recorded mail to:
JPMorgan Chase Bank, N.A.
7301 Baymeadows Way
Jacksonville, FL 32256



11/01/2012

*20121661996*

TS No.: CA-09-253751-ED                                    Space above this line for recorders use
Property Address: 1231 18TH STREET UNIT NO. 1 , SANTA MONICA, CA 90404
APN No.: 4276-012-037

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to

**Deutsche Bank National Trust Company as trustee for WAMU 2005-AR16**

All beneficial interest and all rights accrued or to accrue under that certain Deed of Trust dated 10/25/2005 executed by **PAUL K. LEE AND, YAEYEON YANG, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP**, as Trustor(s) to **CALIFORNAI RECONVEYANCE COMPANY, A CALIFORNIA CORP**, as Trustee and recorded as Instrument No. 05 2633055, on 11/1/2005,        of Official Records, in the office of the County Recorder of LOS ANGELES County, CA.

Dated:  *October 23, 2012*

JPMorgan Chase Bank, National Association,
Successor in Interest by purchase from the Federal
Deposit Insurance Corporation, as Receiver of
Washington Mutual Bank, formerly known as
Washington Mutual Bank, FA

By: _Benito E. Caldwell_   **Vice President**

State of:  **Ohio**                     )
                                        ) ss.
County of:  **Franklin**                )

On  *10/23/12*  date before me, _TARA L. Tucker_ a notary public, personally appeared  **Benito E Caldwell** , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of ___**Ohio**___ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_Tara L. Tucker_

TARA (Seal)TUCKER · NOTARY PUBLIC
COMM. EXP. MAY 26, 2013
STATE OF OHIO

11

Document imaged by DataTree LLC via it's proprietary imaging and delivery system. Co...  All rights reserved

**This page is part of your document - DO NOT DISCARD**



## 20140000909



**Pages: 0004**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/02/14 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201401020110006

00008716705



005964522

**SEQ:
12**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T35

Document by DataTree LLC via it's proprietary imaging and delivery system. Cop...    ll rights reserved



01/02/2014

*20140000909*

Recording requested by:

When recorded mail to:

JPMorgan Chase Bank, N.A.
7301 Baymeadows Way
Jacksonville, FL 32256

Forward tax statements to the address given above

---

TS No.: CA-09-253751-ED
Order No.: 090148089-CA-DCI
APN No.: 4276-012-037

Space above this line for recorders use

# Trustee's Deed Upon Sale

Transfer Tax: **$0.00**

The undersigned grantor declares:
The grantee herein **IS** the foreclosing beneficiary.
The amount of the unpaid debt together with costs was:    **$1,080,082.77**
The amount paid by the grantee at the trustee sale was:    **$910,118.00**
The documentary transfer tax is:    None
Said property is in the City of:  **SANTA MONICA**, County of **LOS ANGELES**

**QUALITY LOAN SERVICE CORPORATION** , as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to

**Deutsche Bank National Trust Company as trustee for WAMU 2005-AR16**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of **LOS ANGELES**, State of California, described as follows:

**PARCEL 1: A) AN UNDIVIDED 1/6 INTEREST IN LOT 1 OF TRACT NO. 49337, IN THE CITY OF SANTA MONICA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1169, PAGES 42 AND 43, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. EXCEPT UNITS 1 TO 6, INCLUSIVE, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN RECORDED FEBRUARY 13, 1991, AS INSTRUMENT NO. 91-220733, IN SAID OFFICE OF THE COUNTY RECORDER. B) UNIT 1, AS SHOWN AND DEFINED ON THE CONDOMINIUM PLAN REFERRED TO ABOVE. PARCEL 2: THE EXCLUSIVE AND NON-SEVERABLE EASEMENT TO USE BALCONY SPACES 1C FOR BALCONY PURPOSES, AND PARKING SPACES P1, P2, P3 AND P4 FOR VEHICULAR PARKING PURPOSES, AND SAID SPACES ARE SHOWN AND DEFINED ON THE CONDOMINIUM PLAN ABOVE.**

Doc... ...d by DataTree LLC via it's proprietary imaging and delivery system. Co... ...ll rights reserved.

This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by **PAUL K. LEE AND, YAEYEON YANG, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF SURVIVORSHIP**, as trustor, dated **10/25/2005**, and recorded on **11/1/2005** as instrument number **05 2633055** of Official Records in the office of the Recorder of **LOS ANGELES**, California, under the authority and powers vested in the Trustee designated in the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust pursuant to the Notice of Breach and Election to Sell under the Deed of Trust recorded on **2/27/2009**, instrument no **09-277924**, Book , Page , of Official records. Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by the Deed of Trust including sending a Notice of Default and Election to Sell within ten/thirty days after its recording and a Notice of Sale at least twenty days prior to the Sale Date by certified mail, postage pre-paid to each person entitled to notice in compliance with California Civil Code 2924b

Default occurred as set forth in a Notice of Breach and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Breach and Election to Sell or the personal delivery of the copy of the Notice of Breach and Election to Sell and the posting and publication of copies of the Notice of Sale have been complied with.

Created by DataTree LLC via it's proprietary imaging and delivery system. All rights reserved

Said property was sold by said Trustee at public auction on **12/16/2013** at the place named in the Notice of Sale, in the County of **LOS ANGELES**, California, in which the property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said trustee the amount being **$910,118.00** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

Date:    DEC 3 0 2013

QUALITY LOAN SERVICE CORPORATION

By: **Ellene Barnett, Assistant Secretary**

State of: **California**)
County of: **San Diego**)

On ___ DEC 3 0 2013 ___ before me, _____ Ashley Maxwell _____ a notary public, personally appeared **Ellene Barnett**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under *PENALTY OF PERJURY* under the laws of the State of **California** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
          Ashley Maxwell

OFFICIAL SEAL
ASHLEY MAXWELL
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1890039
SAN DIEGO COUNTY
MY COMM. EXP. MAY 18, 2014

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.